UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACY LYNN S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-1556 MLP

ORDER AFFIRMING THE COMMISSIONER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting Plaintiff's testimony regarding the severity of her impairments; rejecting the lay witness testimony of Plaintiff's husband; evaluating the medical opinion evidence; and assessing Plaintiff's RFC. (Dkt. # 10.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1972, and has a high school education. AR at 23, 34. At the time of her administrative hearing, Plaintiff was working two full days per week as a receptionist with a

company called Beauty Career. *Id.* at 35, 71. She previously worked as a dispensing optician for twenty-five years. *Id.* at 56, 70.

On March 31, 2015, Plaintiff applied for benefits, alleging disability as of September 21, 2014 due to nerve pain throughout her body, neuropathy, back pain, migraine headaches, anxiety and depression, poor memory, fatigue, blurred vision, hand problems, tremors, and constipation. AR at 15, 86-87, 99. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* The ALJ conducted a hearing on May 25, 2017 (AR at 29-84), and Plaintiff testified that multiple sclerosis (MS) was her primary impairment limiting her ability to work. *Id.* at 44-45. She also described symptoms of anxiety and depression. *Id.* at 48-49.

The ALJ issued a decision finding Plaintiff not disabled. AR at 12-24. Utilizing the five-step disability evaluation process,[1] the ALJ found:

> Step one: Plaintiff has not engaged in substantial gainful activity since September 21, 2014, the alleged onset date.
>
> Step two: Plaintiff has the following severe impairments: multiple sclerosis, depressive disorder, and anxiety disorder.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> Residual Functional Capacity: Plaintiff can perform less than the full range of sedentary work. Plaintiff can engage in unskilled, repetitive, routine tasks in two hour increments. She can do occasional stooping, squatting, crouching, crawling, kneeling, and climbing ramps and stairs. She can do no climbing of ropes, ladders or scaffolds. She is absent from work up to 5 days per year. She is off task at work up to 8% of the time but still meeting the minimum production requirements of the job.
>
> Step four: Plaintiff cannot perform past relevant work.

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

*Id*. at 15-28.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Did Not Err by Discounting Plaintiff's Testimony

### *1. Legal Standard for Evaluating the Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and

effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

> *2. The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 20. Specifically, the ALJ found that Plaintiff's testimony as inconsistent with (1) the objective medical evidence of record; (2) her daily activities; and (3) evidence of secondary gain.

> (i) Objective Medical Evidence

First, the ALJ discounted Plaintiff's statements because the objective medical evidence did not support her allegations that her medical impairments are disabling. AR at 20. Objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of a claimant's symptoms. Social Security Ruling (SSR) 16-3p, *available at* 2016 WL 1119029, *4-5. The ALJ acknowledged that Plaintiff's primary impairment that she alleges prevents her from working is multiple sclerosis, and that diagnosis was confirmed by an MRI as early as March 2014. *Id*. at 20, 396-97. However, the ALJ also found that objective evidence indicates that her disease has not appeared to progress since that initial diagnosis. *Id.* at 20. Specifically, follow-up MRIs in 2015 and 2016 showed no signs that the condition was worsening. *Id.* at 20, 452 (noting that "Your MRI studies have shown no new MS activity and you have not had more than a few flare ups or signs of significant progression."); 574 ("Your brain MRI shows no sign of new MS activity. This is great news. I do not recommend any changes to your current treatment plan with fingolimod."). Furthermore, Plaintiff alleged to

suffer neuropathy in her hands and feet (AR at 86, 99), but had a normal EMG/NCS showing no peripheral neuropathy. *Id.* at 654-55. Similarly, although Plaintiff alleged back pain, the ALJ found that "Dr. Hong stated that the pain is mechanical and an MRI of the lumbar spine did not show [nerve] impingement." *Id.* at 20, 654. As a result, Dr. Hong referred her to a spine clinic to manage her low back pain. *Id.* at 655.

Plaintiff contends that "the ALJ does not cite to any evidence which indicates that the 'normal' findings undermine the seriousness of Plaintiff's MS," and "no physician has opined that she is symptom free or has minimal symptoms based upon a lack of changed MRI findings." (Dkt. # 9 at 5.) Similarly, Plaintiff points out that Dr. Hong referred Plaintiff to a spine clinic to manage her lower back pain, stating "surely the referral would not have been made if Dr. Hong did not believe Plaintiff's pain complaints." (*Id.* at 6.)

The ALJ's reasoning is clear, convincing, and supported by substantial evidence. The ALJ does not dispute that Plaintiff suffers from MS, or that her symptoms are severe and have resulted in functional limitations. AR at 18-20. However, the ALJ did not find these impairments to be disabling, and reasonably cited to objective evidence in the record reflecting that her disease had not progressed or worsened since her original diagnosis. *Id.* at 20. Moreover, Plaintiff's argument that Plaintiff's MS may have caused her neuropathy is not persuasive, given that Plaintiff's doctor explained in January 2017 that peripheral neuropathy and back pain was not a result of Plaintiff's MS, which only affects the central nervous system. *Id.* at 621 ("We discussed peripheral neuropathy is not a result of [MS], which affects only central nervous system. We agree to proceed with an EMG test and blood work to look for treatable causes of peripheral neuropathy.") Similarly, the ALJ could reasonably conclude that the objective evidence did not reflect any condition in her lower back, such as nerve impingement, that would

result in severe functional limitations. *Id.* at 621 ("We discussed degenerative joint disease and degenerative disc disease are common and are not unique to patients with [MS]. We will do MRI of lumbar spine . . . we will consider physical therapy and spine clinic."). The ALJ could reasonably conclude that the objective test results indicated Plaintiff was not as limited by her MS and physical symptoms as she claimed.

(ii) Daily Activities

The ALJ also discounted Plaintiff's testimony regarding her mental limitations resulting from her anxiety, depression, fatigue, and memory problems because her daily activities contradicted her allegations. AR at 20. An ALJ may discount a claimant's testimony if she engages in activities that contradict her testimony. *Molina*, 674f F.3d at 1112-13. For example, the ALJ found that although Plaintiff has "some mental limitations from depressive disorder and anxiety disorder, she retains some capacity for work as consistent with the RFC." *Id*. The ALJ noted that Plaintiff has been working as a receptionist at a beautician college since September 2016, and was still working there two days per week for about nine hours per day at the time of the hearing in May 2017. *Id*. The ALJ noted that the fact that Plaintiff could sustain this position and perform her duties, which involve coming into contact with about 50 members of the public and 30 students in an average day as well as making appointments, reflects that Plaintiff remains capable of unskilled, repetitive, routine tasks in two-hour increments despite her mental limitations. *Id*. at 20, 35-39, 49-50.

Plaintiff contends that the ALJ could not reasonably infer from the fact that Plaintiff could successfully work two days per week that she is also capable of working a full-time schedule. (Dkt. # 9 at 7.) However, the Ninth Circuit has held that there are two ways daily activities can undermine testimony: (1) activities may meet the threshold for transferable work skills, or (2) activities may contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d

ORDER AFFIRMING THE COMMISSIONER - 7

625, 639 (9th Cir. 2007). The ALJ cited Plaintiff's ongoing work activity as evidence of the latter, and therefore the ALJ did not need to find that the activity was comparable to full-time work. Here, the ALJ could reasonably find that Plaintiff's ability to maintain employment "with a fair amount of success" during the alleged period of disability indicates that her limitations did not restrict her ability to work to the point of disability. *Drouin v. Sullivan*, 966 F.3d 1255, 1258 (9th Cir. 1992). The ALJ did not err by finding that Plaintiff's ability to drive 20 miles to work and tolerate at least a nine-hour work day several days per week in a sedentary position that required a great deal of social interaction undermines her statements regarding the severity of her physical and mental symptoms. AR at 20-21.

In addition to her part-time work activity, the ALJ found that Plaintiff engaged in a variety of other "fairly active" pursuits that were also inconsistent with her allegations. AR at 21. Specifically, contrary to her allegations that pain and tingling in her hands rendered her unable to grasp things (AR at 86), Plaintiff reported being able to pick fruit in an orchard, help her husband build a shed, and help her family move from an old to a new house (injuring her knee during the move). *Id.* at 21, 43-44, 55. She alleged trouble with fatigue and difficulty walking (AR at 45, 58-59), but traveled to Mexico with her husband for vacation. *Id.* at 40. The ALJ also noted that she attended a dart tournament and drank alcohol. *Id.* at 21. The ALJ noted that although Plaintiff's injuries (from attempting the move) "were acute, her engagement in a fairly active lifestyle is indicative of her adequate functional capacity that exceeds the limitations alleged." *Id.* at 21.

Although Plaintiff disagrees with the ALJ's evaluation of these activities, the ALJ may draw reasonable inferences from the evidence. *See Burch v. Barnhart*, 400 F.3df 676, 679 (9th Cir. 2005). The ALJ could reasonably conclude that activities like participating in a dart

tournament, picking fruit, and helping to build a shed or move are inconsistent with Plaintiff's allegations of disabling fatigue and problems using her hands.

### (iii) Evidence of Secondary Gain

The ALJ also discounted Plaintiff's testimony because the record contained evidence that Plaintiff was motivated by secondary gain. AR at 21. The ALJ noted that Plaintiff "has expressed concern that if she showed her ability to work, she would then be disqualified from receiving disability benefits." *Id*. Specifically, on October 21, 2015, Plaintiff told Ryan Caldeiro, M.D., that "she has felt somewhat hindered in what she can do because she has decided to pursue SSDI and she fears that if she appears to be trying to do some things, this might disqualify her from obtaining this." *Id.* at 21, 494.

Plaintiff argues that the ALJ should not have relied on this statement to her doctor because it was "vague" and "there is no explanation what she meant." (Dkt. # 9 at 9.) The Court finds that the ALJ did not err by concluding that "this is a secondary-gain consideration that, when viewed together with her self-reported activities and current employment as a Receptionist, casts doubt on the claim of disability." AR at 21. An ALJ may consider evidence of secondary gain when weighing the claimant's statements. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The ALJ could reasonably understand Plaintiff's statement as suggesting that she was intentionally limiting her activities to qualify for disability benefits. This was a clear and convincing reason for the ALJ to give Plaintiff's testimony less weight.

### (iv) Work Record and Pain Disorder

Plaintiff contends that the ALJ erred by failing to consider her good work history, arguing that "Plaintiff's 25 year work history as an optician with a top salary of almost $54,000 negatives the ALJ's credibility findings." (Dkt. # 9 at 9 (citing AR at 187-88).) Similarly,

Plaintiff states in a conclusory fashion that the ALJ "did not consider the combined effect of all of Plaintiff's impairments, which include a pain disorder, as diagnosed by Dr. Caldeira in 2015." *Id.* (citing AR at 497.)

Plaintiff's contentions are not persuasive. Plaintiff cites to no Ninth Circuit authority – and the Court is aware of none – holding that the ALJ is required to consider and credit the testimony of a claimant who previously had a good work record. Similarly, with respect to the Plaintiff's conclusory assertion that the ALJ failed to consider a diagnosis of pain disorder, Plaintiff has failed to identify any harm from this alleged error. Where step two is decided in the claimant's favor, as it was in this case, any error at step two is harmless if the Plaintiff cannot show that functional limitations from this impairment would have otherwise impacted the ALJ's analysis. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Plaintiff has not identified any additional functional limitations due to this alleged impairment that were not included in the ALJ's RFC in this case.

Accordingly, the ALJ properly identified several clear and convincing reasons, supported by substantial evidence, for giving Plaintiff's testimony less weight.

### B. The ALJ's Error in Analyzing the Testimony of Plaintiff's Husband was Harmless

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that

because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Plaintiff contends that the ALJ erred by rejecting the testimony of Plaintiff's husband of eleven years, who testified at the hearing and also submitted a third party function report. AR at 81-84, 209-23. Plaintiff's husband stated that he has observed Plaintiff's pain and numbness when she drops things. *Id*. at 82. He stated that he has seen her tired, when she forgets basic word sentences. *Id*. He stated that chores are often halfway done due to her exhaustion. *Id.* He stated that during their recent vacation in Mexico, they just tried to "take it easy." *Id*. at 83. In his written third party function report, he noted that Plaintiff wakes up every 2-3 hours at night. *Id*. at 210. She forgets to send checks out, so he now does the bill paying. *Id.* at 211. He opined that she is limited to lifting 20 pounds, cannot walk over 1,000 yards, and is limited in sitting and standing. She cannot use her hands "a lot . . . loses feeling." *Id*. at 212.

The ALJ considered the testimony from Plaintiff's husband, including his description of fatigue, manipulative problems, and concentration problems. AR at 82, 212. The ALJ concluded that his "descriptions portray an individual with some functional limitations, as consistent with the established diagnoses, but not to the degree alleged in the application for disability." *Id.* at 22. As a result, the ALJ afforded his hearing testimony and third-party function report limited weight. *Id*.

The ALJ failed to provide a sufficiently specific and germane reason for rejecting the testimony of Plaintiff's husband. However, under the circumstances, this error was harmless. The Ninth Circuit has held that where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with Ninth Circuit precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se. *See Molina,* 674 F.3d at 1117 (citing *Valentine,* 574 F.3d at 694 (holding that if an ALJ gave germane reasons for rejecting the claimant's testimony, those reasons are equally germane to similar testimony by a lay witness.); *Lewis*, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons")). Both Plaintiff and her husband described similar symptoms, including fatigue and concentration problems, as well as problems with her hands, and the ALJ's reasons for discounting Plaintiff's testimony apply equally well to her husband's statements. *See* AR at 20-22, 45, 60, 82, 86, 212. Accordingly, Plaintiff has not shown the ALJ's error in analyzing her husband's testimony was harmful.

### C. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If

an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216. Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. *Ming Hong, M.D.*

Dr. Hong, a neurologist, completed a SSA RFC form in May 2017. He opined that as a result of Plaintiff's MS, she is limited to sitting for four hours, standing one hour, and walking 30 minutes during a workday. She can reach, handle, finger and feel occasionally up to 1/3 of the day. AR at 746-47. Dr. Hong assessed postural limitations, and noted Plaintiff was "forgetful." *Id*. at 748-49. Dr. Hong wrote that Plaintiff has "whole body pain, chronic fatigue, numbness and tingling, dropping things, memory and cognitive symptoms. Due to her symptoms, she is unable to work more than 20 hours per week regular duties in her receptionist job." *Id*. at 752.

The ALJ only gave Dr. Hong's opinion "some weight," because he had a relatively short experience with Plaintiff before offering his opinion about her ability to function in the workplace. AR at 21. Specifically, Dr. Hong only saw Plaintiff a few times between January and May 2017 when he completed this check-box form. *Id*. at 615, 623, 654. The ALJ appropriately considered this factor, as the ALJ may consider the nature of a treating source's relationship with the claimant. 20 C.F.R. §404.1527(c)(3).

The ALJ also discounted Dr. Hong's opinion because "[o]ther than stating multiple sclerosis as the cause, Dr. Hong provide[d] no specific basis for the RFC provided in the medical source statement." AR at 21. The diagnosis of an impairment does not presumptively demonstrate any related limitation, *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990), and the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions. *Molina*, 674 F.3d at 1111. Here, Dr. Hong checked boxes indicating that Plaintiff had a variety of significant physical and environmental limitations. AR at 745-50. However, in the section provided to "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support your assessment or any limitations and why the findings support the assessments,"

Dr. Hong only wrote "MS" or "pt has MS. Wide based gait & fatigue." *Id.* at 745-50. The ALJ could reasonably conclude that simply listing Plaintiff's diagnosis of MS does not adequately explain the degree of limitation assessed. The ALJ also found that Dr. Hong provided no explanation for the manipulative limitations identified in the form. *Id.* at 21, 747. Although Plaintiff complained of tingling in her hands, the medical evidence showed that she had just slightly diminished light touch. *Id.* at 369, 655. The fact that Dr. Hong had little experience with the claimant, and failed to adequately explain or support his findings, are specific and legitimate reasons for the ALJ to give his opinion less weight.

Plaintiff contends that the ALJ erred in discounting this opinion because the ALJ did not address the other factors which supported his findings, including the deference applied to treating physicians, his specialization, the fact that his opinion is arguably consistent with another doctor's opinion, and the possibility that other findings could have accounted for the limitations assessed. (Dkt. # 11 at 11-12.) However, the ALJ is not required to discuss all the factors provided in 20 C.F.R. § 404.1527. The ALJ expressly stated that he "considered the opinion evidence in accordance with the requirements of 20 CFR 404.1527," and in discussing Dr. Hong's opinion, explicitly discussed several factors contained in that provision, such as the supportability and consistency of the opinion. The ALJ did not err by giving Dr. Hong's opinion only "some weight."

        *3.     Evelyn Reilly, Psy.D.*

The ALJ also gave "some weight" to the May 2015 opinion of consulting psychologist Dr. Reilly. AR at 21. Dr. Reilly conducted a neuropsychological exam, administered multiple psychological tests, and opined that the results show a somatization or conversion disorder, which would mean that Plaintiff experiences her physical problems as worse than they may in fact be. *Id.* at 400-09. In pertinent part, Dr. Reilly expressed concern that Plaintiff exaggerated her symptoms. *Id.* at 417, 419. At one point, Dr. Reilly stated that Plaintiff had a "tendency to

endorse items that present an unfavorable impression or represent extremely bizarre and unlikely symptoms." *Id.* at 417. She stated the "result suggests that the profile may exaggerate complaints and problems . . . [she] demonstrates a degree of somatic concerns that is unusual even in clinical samples." *Id.* at 419. The ALJ assigned "some weight" to her opinions because testing revealed a profile which "may exaggerate complaints and problems," which the ALJ characterized as "symptom exaggeration." *Id.* at 21.

Plaintiff contends that the ALJ misunderstood Dr. Reilly's opinion, and ignored the fact that Dr. Reilly also observed that "elevations in this range could also be indicative of a cry for help or an extremely negative evaluation of oneself and one's life. She is currently reporting symptoms consistent with both conversation and somatization disorders, as well as a level of anxiety and relatively mild or transient depressive symptomatology." (Dkt. #9 at 12-13 (citing AR at 406).) However, Plaintiff does not show how, even if the ALJ erred in assessing Dr. Reilly's opinion by finding that she was intentionally overstating her symptoms rather than suffering from a somatization or conversation disorder, it could result in any harm. To be harmful, an error must result in at least a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Dr. Reilly described few concrete functional limitations other than some cognitive problems (AR at 419-20), but limited Plaintiff to unskilled work which would require little or no judgment to do simple duties that can be learned on the job in a short time. AR at 19; *see also* 20 C.F.R. § 404.1568(a). Plaintiff has not identified any functional limitations assessed by Dr. Reilly assessed that were inconsistent with the ALJ's RFC finding. Thus, Plaintiff has not shown that the ALJ committed harmful error in evaluating Dr. Reilly's opinion.

*4. Richard Mesher, M.D.*

Treating neurologist Dr. Mesher has treated Plaintiff annually from June 2009 through August 2015, when he completed a questionnaire regarding Plaintiff's MS. AR at 408-11. Dr. Mesher opined that Plaintiff has difficulties with judgment and solving problems, double vision, paresthesia, as well as fatigue. *Id.* at 408-09. He opined that she can stand/walk less than two hours, and sit about two hours during an eight-hour workday. She also needs to shift positions at will, and take unscheduled breaks due to chronic fatigue. *Id.* at 409-10. He opined that Plaintiff has manipulative and reaching limitations due to "pain/paresthesias and she has 50% less usage of her hands and arms." *Id.* at 410. She will be "off-task" about 20% of the time each day, will experience good and bad days, and be absent about two days per month. *Id.* at 411.

The ALJ assigned only "some weight" to Dr. Mesher's opinions because no explanation was provided for the sitting and standing limitations, or the limitations for usage of her upper extremities. AR at 22. The ALJ noted that "[l]ike Dr. Hong, Dr. Mesher opined that the claimant is limited to 50% of the use of upper extremities, but Dr. Mesher provided no basis for such an extreme position." *Id.* The ALJ found that "[c]ontravening Dr. Mesher's opinions, the claimant's self-reported activities include gleaning fruit produce from an agricultural field, building a shed with her husband, and attempting to effectuate a move." *Id*. (citing AR at 43-44, 55, 494).

Plaintiff contends that the ALJ's findings were unsupported by the record, as Dr. Mesher described Plaintiff's symptoms as including paresthesias (a sensation of pricking, tingling, or creeping on the skin) and fatigue, which could impact walking, sitting, and arm usage. (Dkt. # 9 at 13) (citing AR at 407-08).) Moreover, Plaintiff argues that if the ALJ wanted further explanations, similar to his complaints about Dr. Hong's report, he could have questioned both physicians pursuant to his duty to develop the record. *Id*.

Plaintiff's contentions are unpersuasive, because the ALJ could reasonably discount Dr. Mesher's opinion (as the ALJ did with Dr. Hong) because the doctor provided no explanation or support for his opinion. AR at 22. Supportability is one of the factors the ALJ may consider in weighing a doctor's opinion. 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Although Plaintiff argues that Dr. Mesher *could* have justified his opinion by discussing the impact of Plaintiff's parathesias, he did not do so. AR at 408-11. Dr. Mesher provided no rationale for his opinion that Plaintiff was limited to sitting, standing, and walking for "less than 2 hours" or limited to 50% use of her hands, and the Court declines to speculate as to his meaning. *Id*. at 409-10. This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount Dr. Mesher's opinion.

Similarly, the ALJ did not err by discounting Dr. Mesher's opinion because it was undermined by Plaintiff's self-reported activities. AR at 22. The ALJ may discount a medical opinion that seems unreasonable in light of the record, especially the claimant's activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, the ALJ noted that contrary to Dr. Mesher's opinion that Plaintiff was significantly limited in her ability to stand, walk, and use her hands (AR at 409-11), Plaintiff reported being able to pick fruit in an orchard, help her husband build a shed, and help her family move. AR at 43-44, 55, 494. Even though Plaintiff reported that her ability to perform these activities was intermittent and with difficulty, the ALJ could still find that her participation in these activities contradicts the degree of limitation assessed by Dr. Mesher. Thus, the ALJ permissibly discounted his opinion.

ORDER AFFIRMING THE COMMISSIONER - 18

Finally, although Plaintiff argues that the ALJ should have recontacted Drs. Mesher and Hong before discounting their opinions as unsupported or unexplained, this is not required by law. The agency's regulations provide the ALJ with broad discretion to determine whether to recontact a medical source. 20 C.F.R. § 404.1520b(b). Furthermore, the Ninth Circuit allows an ALJ to discredit treating physicians' opinions that are "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," without requiring the ALJ to recontact the doctor. *Batson*, 359 F.3d at 1195; *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("Rejection of the treating physician's opinion on ability to perform any remunerative work does not itself trigger a duty to recontact the physician for more explanation."). Accordingly, the ALJ identified several specific and legitimate reasons, supported by substantial evidence, for giving Dr. Mesher's opinion only "some weight" without recontacting him. AR at 22.

> *5.    Michael O'Brien, M.D., and Dave Sanford, Ph.D.*

The ALJ adopted the opinions of the state agency medical consultants, Drs. O'Brien and Sanford. AR at 22. Plaintiff contends that the ALJ erred by adopting their opinions without discussing the fact that both doctors did not have an opportunity to review any medical evidence after November 2015, or provide explanations for many of their opinions. (Dkt. # 9 at 14 (citing 20 C.F.R. § 404.1527(c)(3) ("Because nonexamining sources have no examining or treating relationship to you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all the pertinent evidence in your claim, including medical opinions of treating and other examining sources.").)

Plaintiff has not shown that the ALJ's adoption of these opinions was erroneous. The opinions of non-examining medical experts, like Drs. O'Brien and Sanford, may amount to

ORDER AFFIRMING THE COMMISSIONER - 19

substantial evidence as long as other evidence in the record supports their findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found that these opinions were consistent with the objective imagining studies, as well as Plaintiff's self-reported activities. AR at 22. There is also no evidence that the ALJ failed to properly consider the factors set forth in 20 C.F.R. § 404.1527(c). As the Commissioner points out, chronology alone does not demonstrate error. State agency review precedes the ALJ's review of the case, so there is always some time lapse between the medical or psychological consultant's report and the ALJ hearing and decision. Although the non-examining physician may not be able to review every medical record, the ALJ did so and reasonably concluded that the record as whole supported these doctors' opinions. AR at 22.

### V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 15th day of May, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge